IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GOYA FOODS, INC.**, <br><br>   Plaintiff, <br><br> v. <br><br> **ORION DISTRIBUTORS, INC.**, *doing business as* Orion Distributors VM, Inc., *et al.*, <br><br>   Defendants. | Civil No. 10-1168 (BJM) |

## OPINION AND ORDER

Goya Foods, Inc. ("Goya") sued Orion Distributors, Inc. ("Orion") and Angel M. Navarro ("Navarro") (collectively, "defendants"), claiming trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, trademark and trade dress infringement under Law No. 169 of December 19, 2009, 10 L.P.R.A. §§ 223 *et seq.*, violations of moral rights under Law 96 of July 15, 1988, 31 L.P.R.A. § 1401f, "common law unfair competition" under the natural justice provision of Article 7 of the Civil Code, 31 L.P.R.A. § 7, and tort liability under Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, arising out of Orion's marketing of DEL JIBARITO brand foods. (Docket No. 1). Before the court are cross motions for summary judgment regarding the "likelihood of confusion" element common to Goya's Lanham Act claims. (Docket Nos. 22, 23). Defendants replied to and opposed Goya's motion (Docket No. 35), and Goya further replied (Docket No. 36). For the reasons that follow, Goya's motion for partial summary judgment is **granted**, and defendants' motion is **denied**.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are summarized here after applying Local Rule 56, which structures the presentation of proof at summary judgment.[1] Of particular note here is Goya's failure to

---

[1] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether

either (1) submit a Local Rule 56(b) statement of facts in support of its own motion for summary judgment, or (2) admit, deny, or qualify defendants' statement of facts in accordance with Local Rule 56(c). Defendants raised the matter in their reply motion (Docket No. 35, p. 13), but Goya did not respond in its surreply. (See Docket No. 36). Because Goya's failure to follow the local rule is plain, and because it has had ample opportunity to respond or correct its error, defendants' statement of uncontested material facts is **DEEMED ADMITTED**. See P.R. Am. Ins. Co. v. Rivera-Vásquez, 603 F.3d 125, 130-32 (1st Cir. 2010) (addressing application of Local Rule 56 in cross motions for summary judgment). I nonetheless do not accept the conclusory statements regarding differences between Goya and Orion's product labeling as *facts*, and have not set them forth below. (See, e.g., Docket No. 22, p. 13-17, hereinafter "Facts," ¶ 9) ("Goya's 'EL JIBARITO' mark creates a substantially different overall impression than Orion's 'DEL JIBARITO' mark.").

Goya owns the registered trademark EL JIBARITO. (Facts, ¶ 1). The mark was registered in 1955 under the category of "canned vegetables," with international class number 29. (Id., ¶ 10). Between 1955 and 2007, Goya only sold dry[2] pigeon peas under the brand; in 2007, Goya

---

any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id. Thus, litigants ignore the rule "at their peril." Id.
    A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The opposing party must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c). The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph. Local Rule 56(d). Any facts supported by citation to record evidence and not properly controverted as described by the rule are deemed admitted. Local Rule 56(e).
    [2] Defendants asked Goya president Carlos A. Unanue López ("Unanue") to explain this in his deposition:
    Q    Okay. I've seen many beans that come with water inside the can, that's not normal?
    A    I don't understand the question.
    Q    There's water inside the can.
    A    Ah-hah.
    Q    Would they be considered dry beans anyway?

expanded the brand to rice and other types of beans, specifically, black beans, small white beans, pinto beans, red kidney beans, and pink beans. (Id., ¶ 11; Docket No. 22-9, p. 8-9). Goya produced a 15-year sales report of EL JIBARITO brand goods showing sales by case and by total units sold. (Docket No. 22-13).

Orion has marketed DEL Jibarito goods since February 19, 2009. (Facts, ¶ 17). Orion registered the trademark DEL JIBARITO with the USPTO, effective March 22, 2011. (Id., ¶ 22). Orion's products are "bread and pastries"—essentially, ready-to-eat sweets. (Id., ¶ 12). On November 4, 2009, Orion approached Goya seeking a partnership to distribute DEL JIBARITO goods in U.S. markets; at a meeting with Miguel Colón, Goya's product buyer, Colón expressed interest in further negotiations, and did not mention Goya's EL JIBARITO brand. (Id., ¶¶ 18-19).[3]

Orion was not aware of EL JIBARITO until Goya sued on November 16, 2009. (Id., ¶¶ 20-21). Orion has never sold and has no plans to sell canned grains or vegetables. (Id., ¶ 13). Orion knew there was no trademark similar to DEL JIBARITO registered for "bread and pastries" or International Class No. 30 in either U.S. or Puerto Rico registries. (Id., ¶ 23). Navarro is not aware of any instances of confusion between EL JIBARITO and DEL JIBARITO products. (Id., ¶16). Orion developed the logo and package styling using independent contractors. (Id., ¶ 24).

Goya and Orion labels and product packaging are reproduced at the end of this opinion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine

---

A    The pigeon pea[s], if they are, if they are dr[ied] first, then rehydrated, and then canned and processed, they do have water in them. They are still called dry pigeon peas. But, they do have water inside, yes.
Q    Thank you, I just wanted...
A    But they are still called dry pigeon peas, 'gandules secos'.
Q    I just learned something. . . .

(Docket No. 24-4, p. 8).

[3] These statements of fact cite Navarro's unsworn statement under penalty of perjury "verifying" the summary judgment motion's allegations and an untranslated letter to Colón written in Spanish. The letter is not admissible as evidence. See Local Rule 5(g). Nonetheless, I treat the admitted statements of fact as supported by Navarro's statement.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1). Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

Both Goya and defendants moved for summary judgment on the issue of a "likelihood of

confusion" under Goya's Lanham Act claims. Neither motion deals with Goya's Commonwealth claims, so I do not address them in this opinion. Cross motions do not alter the summary judgment calculus; rather, a court "must assess each motion separately," and draw inferences against the respective movants. Velásquez Rodríguez v. Mun'y of San Juan, 659 F.3d 168, 175 (1st Cir. 2011). I thus begin with defendants' motion and then turn to Goya's.

## I. Defendants' Motion for Summary Judgment

Likelihood of confusion under First Circuit law is analyzed in light of eight so-called "*Pignons* factors": "(1) the similarity of [the parties'] marks; (2) the similarity of their goods; (3) the relationship between their channels of trade; (4) the relationship between their advertising; (5) the classes of their prospective purchasers; (6) any evidence of actual confusion of [those] consumers; (7) [defendant's] subjective intent in using [plaintiff's] marks; and (8) the overall strength of [plaintiff's] marks." Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60-61 (1st Cir. 2008) (citing Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 10 n. 6 (1st Cir. 2008)); Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). As these are factors, "[n]o single criterion is necessarily dispositive in this circumstantial inquiry." Venture Tape, 540 F.3d at 61 (quoting Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 120 (1st Cir. 2006)).

### A. The USPTO Findings

Defendants ask the court to weigh its trademark registration as "a potent administrative confirmation of Orion's position." (Docket No. 22, p. 10). The documents submitted by defendants show that the USPTO examining attorney initially denied Orion's application based only on a likelihood of confusion with EL JIBARITO, but granted registration following defendants' reply. (Docket Nos. 22-2, 22-14, 22-15). But while the First Circuit has given USPTO determinations weight in deciding "whether a mark is descriptive or inherently

distinctive," this is a different inquiry from whether a finding of no implied likelihood of confusion deserves weight. Cf. Borinquen Biscuit, 443 F.3d at 119. Defendants offer no authority squarely on point; their passing reference to the principle that courts defer to agency interpretations of the statutes they enforce is inapposite, as there is no dispute of statutory interpretation here. Nor have defendants shown that the examining attorney reviewed all—or indeed, any—of the evidence offered now, which some courts find necessary before giving a PTO decision evidentiary value. See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 220-21 (3d Cir. 2000) (collecting cases). Finally, they articulate no preclusion argument. See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F3d 244, 249-56 (3d Cir. 2006) (analyzing preclusive effect of cancellation decision). Given defendants' failure to develop any reason *why* their registration has probative value, I do not consider it any further.

B.      Similarity of the Marks

"The degree of similarity between two marks . . . is determined by analyzing their sight, sound, and meaning." Boston Duck Tours, 531 F.3d at 24. This is an analysis of the "total effect of the designation, rather than a comparison of individual features." Pignons, 657 F.2d at 487.

The only difference between the EL JIBARITO and DEL JIBARITO names themselves is a preposition: while "el" means "the," "del" means "from the" or "of the," depending on context. But generic words in a compound phrase bear less weight in the similarity analysis. See Boston Duck, 531 F.3d at 24. The only phrasal distinction here is in grammatical function words; thus, a rational factfinder could conclude that the phrases themselves are substantially more similar than not. As for the logos, viewing them "sequentially as if one were in the context of the marketplace rather than in a side-by-side comparison," id. at 29 (citation and quotation marks omitted), it would similarly be reasonable to conclude that the common elements—the man centered in front of a cultivated field, wearing a straw hat, collared shirt, and with busy hands,

with the brand name in stylized writing on a superimposed ribbon—permit a finding of substantial similarity.

Defendants also assert that "Orion's 'DEL JIBARITO' products prominently highlight Orion as the source in the boxes, individual wrappers, and in every possible manner." (Docket No. 22, p. 6). It is true that "in certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." Pignons, 657 F.2d at 487 (collecting cases). But those circumstances involve marks appearing "in close proximity with an equally prominent and uniquely identifying designation," id., and the photos defendants submitted do not indicate such proximity of the Orion logo. (See, e.g., Docket No. 22-7, reproduced *infra* page 17).

Thus, under the standard applicable to Orion's motion for summary judgment, "while the marks are not identical, they are at least similar for the purposes of the present review." See Astra Pharm. Prods., Inc. v. Beckman Instrs., Inc., 718 F.2d 1201, 1205 (1st Cir. 1983). The evidence permits a finding in favor of Goya on this factor.

C. **Similarity of the Goods**

Defendants argue that Goya only markets canned beans and rice with the "El Jibarito" brand, while Orion makes ready-to-eat sweets; thus, they say "it is *inconceivable* that products so essentially dissimilar in nature could generate any substantial likelihood of confusion in the mind of any reasonably cautious average consumer." (Docket No. 22, p. 7) (emphasis added).

This distinction does not mean what defendants think it means. Summary judgment may be appropriate where there is a plain difference in the overall class of goods, though they share the same field. For instance, a "massive instrument, weighing from 350 lbs. to 550 lbs." is so dissimilar from "local anesthetics, cardiovascular medicines, and prefilled syringes" that they cannot be considered similar goods at summary judgment. Astra, 718 F.2d at 1205-06. The

uncontested differences between the products—canned beans and rice versus packaged confections—are not substantial enough to be conclusive on this point.[4]

Defendants also argue that there are significant differences in the goods because Orion's trademark is registered in "International Class No. 30," while Goya's registration is in "International Class No. 29." (Docket No. 22, p. 7). But this administrative classification adds nothing to the substantive analysis; here, as another district court similarly observed, "[t]here is no evidence that a typical consumer has any knowledge of International Classifications or that any perception of similarity flows from that classification." S Industries, Inc. v. JL Audio, Inc., 29 F. Supp. 2d. 878, 891 (N.D. Ill. 1998).

Viewed in the light most favorable to Goya, the evidence of differences between the products' varieties is not so conclusive as to require a finding that they are not substantially similar.

### D. Relationships among Channels of Trade, Advertising, and Classes of Prospective Purchasers

Likelihood of confusion "must be based on the confusion of some relevant person; *i.e.*, a customer or purchaser." Astra, 718 F.2d at 1206. Defendants assert that "the products do not share the same channels of trade, advertising, or prospective purchasers." (Docket No. 22, p. 8). However, the only evidence they cite is co-defendant Navarro's "verification" adopting the motion's factual averments. (Docket No. 22, p. 8; Docket No. 22-10). In short, their position rests on nothing but the motion's own conclusory allegations, which are not sufficient to meet their summary judgment burden of demonstrating an entitlement to judgment as a matter of law.

---

[4] Moreover, though Goya does not raise this point, purchasers of "staple, relatively inexpensive comestibles, subject to frequent replacement . . . have long been held to a lesser standard of purchasing care." See In re Martin's Famous Pastry Shoppe, Inc., 748 F.2d 1565, 1567 (Fed. Cir. 1984) (comparing identical marks for bread and cheese and affirming PTO's denial of registration); accord 4 McCarthy § 23:95 ("The ordinary prudent purchaser does not give much care or thought to the everyday purchase of relatively inexpensive items.") (collecting cases).

In contrast, Goya points to company president Carlos Unanue's testimony that both products are sold in supermarkets. (Docket No. 23, p. 4; Docket No. 24-4, p. 19). While this is not an overwhelming submission of evidence, it nonetheless would be sufficient to establish that Orion and Goya products are both purchased by consumers shopping for food in supermarkets.

### E. Evidence of Actual Confusion

Goya points to no evidence of actual confusion. But even though "evidence of actual confusion is often deemed the best evidence of possible future confusion, proof of actual confusion is not essential to finding likelihood of confusion." Borinquen Biscuit, 443 F.3d at 120 (1st Cir. 2006) (citation and quotation marks omitted). While this factor can only weigh in favor of Orion, it is not dispositive.

### F. Orion's Subjective Intent

As defendants point out, Goya offers no evidence of bad faith in Orion's adoption of the DEL JIBARITO brand. In other words, "despite their general, conclusory allegations of 'willfulness,' plaintiffs have not adduced a scintilla of evidence of palming off, intent to deceive, or any effort whatsoever [by defendants] to benefit from [Goya's] reputation through their use of the term [Jibarito]." Pignons, 657 F.2d at 491 (quoting Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 498 F. Supp. 805, 817 (D. Mass. 1980)). Though Goya accuses defendants of acting with "unclean hands" by registering DEL JIBARITO after Goya brought suit, Goya articulates no reason why this purely legal maneuver reflects an intent to deceive customers or otherwise benefit from Goya's "El Jibarito" brand. Since Goya "provides neither the necessary caselaw nor reasoned analysis to show that [it] is right about any of this," this factor cannot weigh in its favor. See Velásquez Rodríguez, 459 F.3d at 176.

### G. Strength of Goya's Trademark

To assess a mark's strength, courts "look to 'the length of time the mark has been used,

its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark.'" Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 19 (1st Cir. 2004) (quoting Star Fin. Servs. v. Aastar Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996)). In the narrow cases where a defendant attacks the plaintiff's mark as generic and unprotectable, the mark's conceptual distinctiveness may be weighed as well. Boston Duck Tours, 531 F.3d at 16-17. Pointing to Unanue's deposition testimony, Goya asserts that (1) "El Jibarito" has been marketed for years, (2) it is a market leader in dry pigeon peas, and (3) it is a very well-known brand. (Docket No. 23, p. 4-5). Goya's points are not dispositive, as "the muscularity of a mark, in and of itself, does not relieve the markholder of the burden to prove a realistic likelihood of confusion." Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 206 (1st Cir. 1996). I note, however, that defendants' arguments are entirely unpersuasive and border on irrelevant. First, citing a chart that lists the year-to-year sales volume of EL JIBARITO goods, defendants inexplicably conclude that sales have been "negligible in Puerto Rico and probably elsewhere as well." (Docket No. 22, p. 9, citing Docket No. 22-13). Yet the chart does not list relative market share or provide other information from which to draw any conclusion, positive or negative, about the brand's market renown. Second, defendants argue that because "Goya's own product buyer *seemed* utterly oblivious to the existence of the mark, *making no mention of it* whatsoever," it must be "weak." (Id.) (emphasis added). But defendants never explain why this has probative value. Even the intermediate assumption—that the buyer said nothing because he or she did not know about EL JIBARITO—is speculative, as silence equally suggests that Goya's agent preferred to raise the trademark matter with his or her superiors rather than a prospective business partner. Finally, it is unclear why "Goya's persistent failure to identify itself as the source of the 'EL JIBARITO' products even suggests a certain reluctance on the part of Goya to be associated with" the brand. (Docket No. 22, p. 9-10).

Trademarks include those marks "used . . . to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Regardless, any such "reluctance" is not material to the mark's strength in the marketplace. In short, only Goya has offered competent evidence addressing this factor.

### H.     Summary

While there is no conflicting evidence to compare or credibility determination to make in this case, defendants have not shown that they prevail as a matter of law. Of the eight *Pignons* factors, only the actual confusion and subjective intent factors are so devoid of evidence favoring Goya that they could not be rationally weighed in its favor. Therefore, defendants are not entitled to summary judgment.

## II.    Goya's Motion for Summary Judgment

Since the same legal contentions and evidentiary submissions are at issue in Goya's cross motion, I proceed directly to the *Pignons* factors, treating Goya as the moving party.

### A.     Similarity of the Marks

The factual composition of the names, logos, and packaging is uncontested, and do not permit a rational conclusion that "their sight, sound, and meaning" as a whole, "as if one were in the context of the marketplace," Boston Duck Tours, 531 F.3d at 24, 29, are not substantially similar. Defendants argue that "the countryman" and "*from* the countryman" distinguish the products' sources, but offer no analysis or authority to support this conclusion. To whatever extent this minimal distinction in meaning could be given weight, the "D" in "Del" makes precisely one letter's difference in sight and sound.

The similarity of the word mark is not mitigated when it is incorporated into the logos. Of course, there are certain distinctions between the logos: Goya's lettering is colored in a blue/white gradient with a black outline, Orion's is red with a white outline; Goya uses a green

ribbon, Orion uses gold; Orion adds wheat to form a crest while Goya does not; Goya's character is holding a hoe, while Orion's has a sack over his shoulder; Goya's rolling countryside has a farmhouse, palm trees, a leafy plant, and a rocky mountain in the background; Orion's hills feature only a red flowering tree. And there are overall differences in the visual style of the two drawings, such as the weight and sharpness of lines, harshness of shadows, and depiction of small details. But the legal standard does not call for a mechanical computation of the relative differences and similarities in two marks. Rather, bearing in mind the ultimate question of whether there is a likelihood of confusion, the inquiry is whether the evidence could permit a rational conclusion that the logos are not similar on the whole. See also Baker v. Master Printers Union of N.J., 34 F. Supp. 808, 811 (D.N.J. 1940) ("[F]ew would be stupid enough to make exact copies of another's mark or symbol . . . the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts.") (quoted in Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 30 (1st Cir. 1989)). Given the almost perfect identity of the marks' sound and meaning, defendants have failed to show that the differences in appearance could logically render them dissimilar under the applicable legal standard. See Boston Athletic, 867 F.2d at 30 (marks' identical meaning "overcomes any difference in appearance between them."). This factor, therefore, weighs in Goya's favor.

  **B.**  **Similarity of the Goods**

It is uncontested that both brands cover packaged, consumer-market foods, with the primary distinction being that Orion's products are generally ready-to-eat sweets, while Goya sells beans and rice. But "the more similar the marks are, the less necessary it is that the products themselves be very similar to create confusion." Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 39 (1st Cir. 2006) (citing 3 McCarthy on Trademarks and Unfair Competition § 23:20.1 & nn. 1-2 (4th ed. 2005)). Despite defendants' asseverations, they point to no evidence of any

other relevant difference between the products. Thus, at best, these differences could only weakly weigh against finding an overall likelihood of confusion.

### C. Relationships among Channels of Trade, Advertising, and Classes of Prospective Purchasers

As discussed above, the only competent evidence on this point indicates that both Goya and Orion products are sold to consumers in supermarkets; defendants offer neither evidence nor argument that would show *any* distinction in the products' channels of trade, advertising, or classes of purchasers. These elements therefore, can only be weighed in Goya's favor.

### D. Evidence of Actual Confusion and Orion's Subjective Intent

For the same reasons discussed regarding defendants' motion, Goya's failure to adduce any evidence of confusion or Orion's bad faith prevents these factors from weighing in its favor at summary judgment. But see Borinquen Biscuit, 443 F.3d at 120 (absence of actual confusion is not dispositive).

### E. Strength of Goya's Trademark

To establish the strength of its mark, Goya points to evidence that the "El Jibarito" brand has been used in commerce since 1946, is the market leader in dry pigeon peas in U.S. Hispanic markets, and has been expanded to other types of beans and rice in the last five years. (Docket No. 23, p. 4-5). As explained above, defendants have failed to either offer competent evidence or persuasive argument rebutting this factor. Since there is no factual dispute, and the evidence uniformly supports Goya's position, this factor must weigh in favor of Goya.

### F. Summary

Goya has established that there is no genuine dispute of material fact, and that even viewing the evidence favorably to defendants, the similarity of marks, relationships among the channels of trade and classes of purchasers, and strength of its own mark weigh towards a finding of substantial likelihood of confusion. Defendants, for their part, have shown that the

evidence does not weigh in Goya's favor with respect to the similarity of goods, and that Goya has not provided any evidence of actual confusion or of Orion's subjective bad faith. Viewed as a whole, the factors weighing in Goya's favor—that Orion's goods are marketed to the same consumers, using the same outlets, and using similar names and logos as Goya's long-established and expanding brand—necessarily overcome the adverse inferences that may be drawn from the degree of difference between the products and Goya's failure to produce evidence of actual confusion or bad faith. Therefore, Goya is entitled to summary judgment regarding the existence of a likelihood of confusion.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **DENIED.** Goya's motion for summary judgment is **GRANTED.** Goya is entitled to a partial judgment finding that there is a substantial likelihood of confusion between Orion's DEL JIBARITO brand and Goya's EL JIBARITO brand.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March, 2012.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge

**Goya Foods, Inc. v. Orion Distributors, Inc.**  Page 15
Civil No. 10-1168 (BJM) – Opinion and Order

## APPENDIX 1: "JIBARITO" LOGOS




Goya EL JIBARITO label variants.  (Docket Nos. 23-4, 23-5).




Orion DEL JIBARITO label variants. (Docket No. 22-3).

## APPENDIX 2:  PACKAGING



EL JIBARITO rice packaging.  (Docket No. 22-4, p. 2).



Example of Orion DEL JIBARITO packaging.  (Docket No. 22-6, p. 4).

**Goya Foods, Inc. v. Orion Distributors, Inc.**  Page 17
Civil No. 10-1168 (BJM) – Opinion and Order

## APPENDIX 3: PHOTOGRAPHS OF PRODUCTS



Sample of Goya EL JIBARITO product.  (Docket No. 22-7).



Samples of Orion DEL JIBARITO products.  (Docket No. 22-5).